Ronald MAGGARD, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant–Appellee.

No. 98–1188.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1998.

Decided Feb. 4, 1999.

Anthony W. Bartels, E. Gregory Wallace (argued), Jonesboro, AR, for Plaintiff–Appellant.

W. Charles Grace, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, Ekaterina Scherb, Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, Anne M. Lobell (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, for Defendant–Appellee.

Before POSNER, Chief Judge,
CUMMINGS and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

Ronald Maggard suffers from alcoholism, drug addiction, back pain, foot pain, and bleeding ulcers. Maggard last performed substantial gainful activity in 1986, when he worked as a janitor and maintenance man. He has worked in the past as a deckhand on a riverboat, food preparer, and assembly line worker. In July 1993, Maggard applied for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1382, 1382c. A hearing was held before an Administrative Law Judge (ALJ), who denied Maggard's claim. Thereafter the Appeals Council of the Social Security Administration denied Maggard's request for review. Maggard then appealed to federal district court under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), the parties consented to final entry of judgment by a United States Magistrate Judge. Magistrate Judge Gerald B. Cohn ultimately denied Maggard's appeal. Maggard then took an appeal to this Court. 28 U.S.C. § 1291.

To be eligible for DIB and SSI benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 432(d)(1)(A), 1382c(a)(3)(A). The Commissioner of Social Security uses a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f); *Bowen v. Yuckert*, 482 U.S. 137, 140–142, 107 S.Ct. 2287, 96 L.Ed.2d 119. The first two steps involve threshold determinations as to whether a claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. 20 C.F.R. §§ 404.1520(a)(c), 416.920(a)–(c). In the third step, evidence of the claimant's impairments is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. If an impairment meets or equals one of the listed impairments, the claimant qualifies for benefits without further inquiry. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant cannot qualify under the listed impairments, the analysis proceeds to the fourth and fifth steps. In the fourth step, the inquiry is whether the claimant's residual functional capacity (RFC) will allow the claimant to pursue his past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If a claimant's impairment precludes the performance of his past work, the claimant's RFC, age, education, and past work experience are considered in the fifth step to determine if other work exists that would accommodate the claimant. 20 C.F.R. §§ 404.1520(f), 416.920(f).

In an opinion issued on May 24, 1995, the ALJ found that Maggard satisfied the first two steps of the five-part analysis, but that Maggard's impairments did not meet or equal the listing of impairments for which benefits are presumed in the third step of the analysis. Proceeding to the fourth step, the ALJ found that Maggard's RFC allowed him to perform simple unskilled work in a low stress environment and that his disabilities therefore did not prevent Maggard from performing his past relevant work as a janitor. The ALJ consequently denied Maggard's application for benefits.

On May 25, 1997, the Social Security Administration's Appeals Council denied Maggard's request for review. Maggard then took an appeal to federal district court. In an opinion issued January 6, 1998, Magistrate Judge Cohn denied Maggard's appeal, relying on provisions of federal legislation enacted on March 29, 1996 which preclude a finding of disability for Title II or Title XVI benefits if alcoholism or drug addiction is a contributing factor to a finding of disability.

The statute states: "[A]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). To determine whether alcoholism or drug addiction is a contributing factor material to a determination of disability, the Social Security Administration considers whether the claimant would be found to be disabled if his alcohol or drug use stopped. See 20 C.F.R. §§ 404.1535, 416.935.

In the absence of Seventh Circuit precedent on point, Magistrate Judge Cohn relied on *Torres v. Chater*, 125 F.3d 166, 169–171 (3d Cir.1997), and held the Social Security Act amendments to apply to all cases which had not been finally adjudicated on the date of their enactment. Magistrate Judge Cohn held Maggard's alcoholism and drug addiction to be factors material to a determination of disability under the amendments and affirmed the ALJ's denial of benefits.

Maggard took an appeal to this Court, arguing that the amendments to the Social Security Act apply only to those for whom the onset of disability occurred after the date of enactment. The Commissioner seeks to uphold Magistrate Judge Cohn's decision, arguing that the amendments apply to those whose claims had not been finally adjudicated as of March 29, 1996, the effective date of the new legislation. Those courts which have considered the issue have labeled Maggard's and the Commissioner's competing interpretations the "disability interpretation" and the "adjudication interpretation." The "disability interpretation" has found support in district court opinions, see, e.g., *Hall v. Chater*, No. 96C580 (N.D.Ill., Mar.21, 1997) (unpublished order), *Teitelbaum v. Chater*, 949 F.Supp. 1206, 1212–1213 (E.D.Pa.1996) (abrogated by *Torres*), though it has yet to find any adherents in the Circuit courts. See *Torres*, 125 F.3d at 169–71, *Adams v. Apfel*, 149 F.3d 844, 845–846 (8th Cir.1998) (adopting the "adjudication interpretation").

We need not decide in this case between the disability and adjudication interpretations of the Social Security Act amendments.

The ALJ did not consider the amendments in reaching his decision because they were enacted after his decision was rendered. Although the ALJ's opinion regarded Maggard's alcoholism as one of the contributing factors to his inability to work, the ALJ still found that Maggard failed to establish he was entitled to disability benefits. Consideration of the relative merits of the disability and adjudication interpretations is therefore moot. Our review is limited to whether the ALJ's denial of benefits was predicated on substantial evidence. Had the ALJ found Maggard to be disabled and had he included Maggard's alcoholism as a contributing factor to this determination, we would then have occasion to consider whether the amendments made the ALJ's reliance on Maggard's alcoholism improper. Since the ALJ found that Maggard was not disabled, our review on appeal is limited to the characteristic review of whether the ALJ's decision was predicated on substantial evidence.

■■■ Judicial review of the ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842. "In our substantial evidence determination, we review the entire record; however, we do not substitute our judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir.1997).

■■■ Our review of the record reveals that the ALJ's decision was supported by substantial evidence. Maggard contended his impairment was severe enough to qualify automatically for benefits under the third step of the inquiry outlined above. Under this theory, a claimant is eligible for benefits if he has an impairment, or combination of impairments, which meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The

Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing. 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by findings that are equal in severity to those described in a section of the Listing. 20 C.F.R. §§ 404.1526, 416.926. To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment. *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir.1991). The claimant bears the burden of proving his condition meets or equals a listed impairment. *Steward v. Bowen*, 858 F.2d 1295, 1297 n. 2 (7th Cir.1988).

Listing 12.05 in Appendix 1 defines mental retardation as "a significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." Under 12.05(C), a claimant is considered disabled due to mental retardation when he has "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

Maggard argued before the ALJ that a verbal IQ score of 68 on the Wechsler Adult Intelligence Scale–Revised (WAIS–R) test administered by Dr. Dean Rosen satisfied the first prong of § 12.05(C). Maggard also scored a full-scale IQ of 71 and a performance IQ of 76. However, the applicable regulations direct our inquiry to the lowest of the three scores. "In cases where more than one IQ is customarily derived from the test administered, i.e., where verbal, performance, and full-scale IQs are provided as on the WAIS, the lowest of these is used in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.00(D).

■ The text of § 12.05(C) requires an IQ score to be "valid." Elements of Dr. Rosen's report and other evidence in the record cast doubt on the validity of Maggard's verbal IQ score. First, Maggard admitted to Dr. Rosen that he had not eaten in the two days preceding the test and had been drinking until two in the morning the night before the test. Dr. Rosen believed both factors may have contributed to a lowering of Maggard's scores. Second, Dr. Rosen made no diagnosis of mental retardation, terming Maggard's functioning as "borderline." Third, a previous psychiatric evaluation of Maggard ordered by the Social Security Administration (Dr. Rosen's examination was at the request of Maggard's attorney) by Dr. Georgia Jones found no evidence of mental retardation. Although Dr. Jones did not administer an IQ test, through clinical examination she did conclude that Maggard's ability to relate to fellow workers and supervisors, his ability to understand and follow instructions, his ability to maintain attention required to perform simple, repetitive tasks, and his ability to withstand the stress and pleasures associated with a day-to-day work activity were all intact.

On the basis of this evidence, the ALJ concluded that Maggard's verbal IQ score was invalid. Consonant with 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D), which directs the ALJ to "include a discussion of whether or not obtained IQ scores are considered valid and consistent with the individual's developmental history and degree of functional restriction," the ALJ included a discussion of his reasons for concluding that Maggard's IQ score was invalid. Our review of the record reveals that substantial evidence supports the ALJ's determination that Maggard's verbal IQ score was invalid. Since substantial evidence supports the ALJ's conclusion that Maggard's IQ score did not satisfy the first prong of § 12.05(C), we need not address whether he satisfied the second prong, i.e., whether Maggard possessed "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

■ Unable to qualify for automatic benefits under the third step of the inquiry outlined above, Maggard proceeded to the fourth and fifth steps, seeking to show that his residual functional capacity (RFC) would not allow him to pursue his past work and

that no other work existed that would accommodate him.

On the basis of the evidence before him, the ALJ doubted whether Maggard's limitations were as severe as he alleged. Maggard alleged disability due to a history of ulcers, mental impairment, alcohol and drug abuse, broken toes in the left foot, a broken right thumb, and an indeterminate claim of heart pain. The ALJ discredited Maggard's claim that he was unable to walk more than a block at a time, citing the absence of any evidence of musculoskeletal impairments, and refused to believe Maggard's testimony that his "heart hurt since age 7" given the absence of any cardiac diagnosis or treatment for cardiac problems.

Considering those limitations supported by the evidence, Maggard's borderline intellectual functioning, the decreased grip strength in his right dominant hand and the limitations on fine hand movements, the ALJ followed a vocational expert's recommendation that none of these limitations prevented Maggard from assuming his previous employment as a janitor. In considering whether Maggard's alcoholism and drug abuse prevented him from working as a janitor, the ALJ followed Dr. Jones in believing that Maggard's substance abuse did not significantly limit his ability to perform the daily activities required of a janitor. The ALJ noted that Maggard was terminated from his previous work for sleeping on the job, not because of drug or alcohol usage. In view of the evidence, the magistrate judge's finding that Maggard is not disabled is supported by substantial evidence in the record.

The judgment of the district court is

AFFIRMED.